UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | :    S2 08 Cr. 789 (RJS) |
| ROBERTO SANCHEZ, | : |
|     Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# OPPOSITION TO DEFENDANT ROBERTO SANCHEZ'S MOTION
# FOR COMPASSIONATE RELEASE

 

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Michael D. Lockard,
Assistant United States Attorney
 *- Of Counsel -*

Pursuant to the Court's orders dated April 15 and 21, 2020, the Government respectfully submits this memorandum of law in opposition to the motion by the defendant, Roberto Sanchez ("Sanchez" or the "defendant") to reduce his sentence pursuant to the First Step Act of 2018, Pub. L. 115-391 (Dec. 21, 2018) (the "First Step Act"), as codified in 18 U.S.C. § 3582(c)(1)(A). Sanchez seeks compassionate release based on his rehabilitation while incarcerated (D.E. 402)[1] and based on the spread of coronavirus infectious disease, COVID-19, at FCI Elkton, where Sanchez is currently serving his sentence. (D.E. 406, 409, 411). As discussed more fully below, Sanchez's purported rehabilitation is not an extraordinary and compelling reason to reduce his sentence, and Sanchez's request for compassionate release based on risk of COVID-19 exposure is premature. Accordingly, the motion should be denied.

## BACKGROUND

### A.    The Indictment

On February 18, 2009, Sanchez was charged in a superseding indictment, S2 08 Cr. 789 (RJS) (the "Indictment"), with conspiring to distribute, and to possess with intent to distribute, five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Count One). (D.E. 70). The charges in the Indictment arose out of Sanchez's participation in a conspiracy to traffic multi-hundred kilogram quantities of cocaine imported from Panama to the United States through the New York/New Jersey seaport, where Sanchez collected the cocaine and used his trucking company to transport the cocaine for delivery to co-conspirators for further distribution. (PSR ¶¶ 11-16).

---

[1] In this memorandum, "D.E." refers to entries in the docket, "[date] Tr." refers to the transcript of proceedings held on the identified date; and "PSR" refers to the Presentence Investigation Report prepared by the United States Probation Office.

### B. Sanchez's Guilty Plea and Sentencing

On March 9, 2009, Sanchez pleaded guilty to Count One of the Indictment. (March 9, 2009 Tr.).

On July 28, 2009, the Court held a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979). (July 28, 2009 Tr.). At a sentencing proceeding on September 24, 2009, the Court imposed a sentence of 240 months' imprisonment, a term of supervised release of 60 months, and a fine of $1 million. (Sep. 24, 2009 Tr.; D.E. 140). The Court determined that Sanchez's sentencing range under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") was 324 to 405 months' imprisonment, based on a total offense level of 41 and a Criminal History Category of I. (Sep. 24, 2009 Tr.; *see also* D.E. 357 at 2). The total offense level reflected a four-level enhancement for Sanchez's leadership role, a two-level enhancement for the possession of firearms by Sanchez's co-defendants as part of the offense conduct, and a drug quantity in excess of 150 kilograms of cocaine. (Sep. 24, 2009 Tr.; PSR ¶¶ 24-34). *See also United States v. Sanchez*, 419 Fed. Appx. 27, 31 (2d Cir. Apr. 5, 2011).

According to the Bureau of Prisons ("BOP") website, Sanchez's current projected release date is August 25, 2025.

### C. Post-Conviction Proceedings

Following his conviction, Sanchez moved *pro se* for a reduction of his sentence (D.E. 199, 296, 349, 395) and petitioned *pro se* to modify, vacate or reduce his sentence pursuant to 28 U.S.C. § 2255 (12 Civ. 7559 (RJS)). Sanchez's obligation to pay his fine was stayed pending his release (D.E. 252) and the motions were otherwise denied. (D.E. 314, 321, 343, 357, 396).

### D. Sanchez's Motion for Compassionate Release

On November 26, 2019, Sanchez filed a *pro se* motion for compassionate release pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A) based on his remorse and

2

rehabilitation while incarcerated. (D.E. 402). Sanchez requested a reduction in his sentence to time served, to home confinement, or to release to a halfway house. (*Id*. at 3). The motion indicated that his request was submitted to the BOP on September 4, 2019. (*Id*. at 4-6). On April 9, 2020, Sanchez filed a letter supplementing his motion for compassionate release to include medical condition, namely, his diabetes and high blood pressure and the presence of COVID-19 at FCI Elkton. (D.E. 406).

On April 17, 2020, the defendant, through counsel, filed a supplemental submission expanding on his request for compassionate release based on his medical condition. (D.E. 417). The April 17, 2020 letter requests a reduction in Sanchez's sentence to time served (*id.* at 2, 9), and suggests that, if released, Sanchez would be placed in home detention or subject to stay-at-home orders at his brother's home in the New Jersey suburbs of New York City. (*Id.* at 8). The request was based on Sanchez's medical condition, which includes diabetes and hypertension, and his risk of exposure to COVID-19 at FCI Elkton. (*Id*. at 37-8).[2] Sanchez's diabetes and hypertension place him at greater risk of serious COVID-19 symptoms than individuals without pre-existing medical conditions. (*Id*. at 2). The spread of COVID-19 among inmates and staff within the Bureau of Prisons has been recognized by the Attorney General as an emergency condition materially affecting the functioning of the BOP, authorizing the expansion of the cohort of inmates who can be considered eligible for home release under the BOP's administrative authorities. (*Id*. Ex. A at 1). The Attorney General further recognized that FCI Elkton is one of the BOP facilities experiencing significant levels of infection. (*Id*.).[3] As of April

---

[2] According to information provided by the BOP, Sanchez is currently assessed with hyperlipidemia (high cholesterol), hypertension, and type II diabetes, among other conditions.

[3] As of the writing of this memorandum, BOP reports 52 COVID-19-positive inmates at FCI Elkton, 48 positive staff, and 6 COVID-19-related inmate deaths.

3

3, 2020, BOP was directed to immediately begin reviewing all inmates with COVID-19 risk factors at FCI Elkton and similarly situated facilities for eligibility for placement in home confinement. (*Id*. at 2). Sanchez's supplemental letter indicates that a request for compassionate release was submitted to the BOP on April 9, 2020, though a copy of that request is not attached to the letter. (*Id*. Ex. B). Counsel argues that the Court can consider Sanchez's motion, notwithstanding that 30 days have net yet elapsed since Sanchez submitted his request to the BOP, *see* 18 U.S.C. § 3582(c)(1)(A), based on emergency conditions. (*Id*. at 4-6).

On April 20, 2020, the Court denied Sanchez's request for compassionate release based on medical condition and risk of COVID-19 exposure without prejudice, because the motion was made less than 30 days after Sanchez sought relief from the BOP. (D.E. 410 at 2 (citing *United States v. Ogarro*, 18 Cr. 373 (RJS), 2020 WL 1876300 (S.D.N.Y. Apr. 14, 2020)). The Court directed counsel to advise whether counsel also represents Sanchez in connection with his November 26, 2019 motion. (*Id*. at 3). In response to the Court's order, counsel for the defendant filed a second supplemental submission that day advising that Sanchez is also represented with respect to his November 26, 2019 submission, but principally arguing that compassionate release is warranted based on Sanchez's risk of COVID-19 exposure. (D.E. 411).

On April 15, 2020, the Court directed the Government to respond to Sanchez's November 26, 2019 and April 9, 2020 letters by April 22, 2020. (D.E. 407). On April 21, 2020, the Court directed the Government to also respond to Sanchez's second supplemental letter dated April 20, 2020. (D.E. 412).

4

## DISCUSSION

**I.      Compassionate Release**

18 U.S.C. § 3582(c)(1)(A)(i) authorizes a district court to modify a defendant's sentence based on "extraordinary and compelling reasons." Prior to the enactment of the First Step Act, only the BOP could move for a sentence reduction under this provision, and its decision not to move for compassionate release was not reviewable by the district court. *See, e.g., Stewart v. United States*, 13 Civ. 5279 (JGK), 02 Cr. 395 (JGK), 2013 WL 4044756, *3-6 (S.D.N.Y. Aug. 9, 2013); *see also United States v. Iosifidis*, 13 Cr. 170 (JFK), 2016 WL 3267329, *2 (S.D.N.Y. June 9, 2016). The First Step Act amended this subsection to permit inmates to file motions for compassionate release following the exhaustion of their administrative remedies or 30 days after submitting a request to the appropriate Warden, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

The First Step Act did not alter the requirements for eligibility for compassionate release, which are set forth in § 3582(c)(1)(A) and Section 1B1.13 of the Guidelines. The court may modify a sentence only if it finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction," § 3582(c)(1)(A)(i). The proposed reduction "must be consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In addition, the district court must "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id*.

The relevant policy statement is found in Section 1B1.13 of the Guidelines. *See* U.S.S.C. § 1B1.13(3). Among other things, the Guidelines provide that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13, app. n.3.

The Guidelines provide that "extraordinary and compelling reasons" based on the defendant's medical condition exist when (i) "[t]he defendant is suffering from a terminal illness;" or (ii) the defendant is suffering from a "serious physical or medical condition," "serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

Extraordinary and compelling reasons may also exist when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of note 1. *See* U.S.S.G. § 1B1.13, cmt. n.1(D). Some district courts have concluded that, under the plain language of the Guidelines, only the BOP can make a determination of extraordinary and compelling reasons under this policy statement. *See, e.g.*, *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019); *United States v. Lynn*, Cr. No. 89-0072-WS, 2019 WL 3805349, at *3-4 (S.D. Ala. Aug. 13, 2019); *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663 (D. Ariz. June 28, 2019); *United States v. Gross*, No. 2:04-CR-32-RMP, 2019 WL 2437463 (E.D. Wash. June 11, 2019); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311 (M.D. Fla. June 7, 2019); *United States v. Willis*, 382 F.Supp.3d 1185 (D.N.M. 2019); *United States v. Shields*, No. 12-cr-00410-BLF-1, 2019 WL 2359231 (N.D. Ca. June 4, 2019). Other courts have concluded that the First Step Act implicitly authorizes the court to make this determination in the place of the BOP, despite the fact that the Commission has not amended the Guidelines to expand the policy statement in this manner. *See, e.g.*, *United States v. Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994

(S.D.N.Y. Feb. 24, 2020); *United States v. Rivernider*, No. 10 Cr. 222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020); *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019); *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019).

**II.     Sanchez's Motion Should Be Denied**

Sanchez's motion for compassionate release based on his rehabilitation while incarcerated, as described in his *pro se* November 26, 2019 submission and incorporated in his counseled April 20, 2020 letter, should be denied. "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13, app. n.3; *see also* 18 U.S.C. § 944(t); *United States v. Weeks*; 16 Cr. 167 (LAP), 2020 WL 1862634, *3 (S.D.N.Y. Apr. 14, 2020) ("While these efforts [to 'grow and excel'] are indeed admirable, they are not grounds for release under Section 3582(c)(1)(A)."); *United States v. Reese*, 12 Cr. 629 (VM), 2020 WL 1847552, *1 (S.D.N.Y. Apr. 13, 2020) ("Courts have thus found that good behavior alone does not constitute an adequate basis to justify immediate release under Section 3582."). As this Court held in response to Sanchez's earlier motion for compassionate release based on his accomplishments in prison and his completion of prison programs, "[t]he Court commends Defendant on these achievements. However, it is without the power to modify his term of imprisonment on the basis of such behavior alone." (D.E. 396 at 2).

Sanchez's motion for compassionate release based on his health conditions and risk of exposure to COVID-19 should also be denied. As the Court already has held, the motion is premature. Sanchez has not exhausted his administrative remedies and 30 days have not passed since Sanchez made his request to the BOP on April 9, 2020, as required by § 3582(c)(1)(A).

7

(D.E. 410 at 2). Though Sanchez argued in his April 17 and 20, 2020 letters that the Court may excuse these statutory requirements, the Court already has held that "it has no authority to waive that exhaustion requirement." (D.E. 410 (quoting *Ogarro*, 2020 WL 1876300, \*4)).

The exhaustion requirement is not only mandatory under the statutory language, it is consistent with the purposes of exhaustion and with the BOP's response to the developing COVID-19 situation. *See United States v. Raia*, 945 F.3d 954 (3d Cir. 2020) (noting BOP's "extensive and professional efforts to curtail the [novel corona]virus's spread"). On March 26, 2020, the Attorney General directed the BOP to use home confinement, a tool to manage the prison population and keep inmates safe, in response to the COVID-19 pandemic. *See* Memorandum for Director of Bureau of Prisons, *Re: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020) ("March 26 AG Memo"), *available at* https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf. The Attorney General directed the BOP to consider various factors in determining whether home confinement was appropriate, including the age and vulnerability of the inmate, as well as the security level of the prison, the likelihood of recidivism, the availability of a demonstrated and verified re-entry plan, and the potential danger to the community. *Id*. at 1-2.

On April 3, 2020, the Attorney General invoked the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. 116-236 (Mar. 27, 2020), to expand the cohort of inmates eligible for home release and directed the BOP to prioritize inmates at the facilities most affected by COVID-19, including FCI Elkton, for consideration for home confinement. *See* Memorandum for Director of Bureau of Prisons, *Re: Increasing the Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020) ("April 3 AG Memo"), *available at* https://www.justice.gov/file/1266661/download. At the same time, the Attorney

8

General has cautioned that "we also have an obligation to protect the public" and thus BOP must take care to avoid the "indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. At the time of this memorandum, 1,440 inmates have been placed on home confinement since the Attorney General's March 26, 2020 directive. *See* Bureau of Prisons, COVID-19 Home Confinement Information, *available at* https://www.bop.gov/coronavirus/.

As the Court's April 20, 2020 order also notes, BOP may use furlough as an administrative measure to temporarily remove inmates from the prison population in appropriate cases. (D.E. 410 at 2-3; 18 U.S.C. § 3622). In either case, any inmate that the BOP determines is appropriate for furlough or home confinement must undergo a mandatory 14-day quarantine in order to protect the public from contributing to the spread of COVD-19 in the community. (March 26 AG Memo at 2).

The BOP also has implementing measures to safeguard the health of staff and inmate at its facilities, including at FCI Elkton. In an April 16, 2020 declaration, the Health Services Administrator at FCI Elkton described the measures adopted at that facility and more generally within the BOP. *See Wilson v. Williams*, No. 4:20-CV-00794-JG (N.D. Ohio), Dkt. Entry No. 10 Ex. 2 (Apr. 17, 2020) (Declaration of Sandra Dees) ("Dees Decl."). The FCI Elkton clinical staff includes two physicians, five mid-level providers, five Registered Nurses, and one Infection Control/Improving Performance Nurse, among others. (*Id.* ¶ 3). Medical coverage is offered 24 hours daily during the COVID-19 pandemic. (*Id.*). Among other measures to increase the availability of medical resources and limit inmates' and staff's exposure to

9

COVID-19, all staff have their temperatures taken daily on entry into the facility (*id*. ¶ 10) and all inmates were screened daily between March 20 and April 12, 2020. (*Id.* ¶ 28). Inmates on certain work details continue to be screened before and after each detail. (*Id.* ¶ 32). All inmates are encouraged to self-monitor and report any COVID-19-like symptoms. (*Id.* ¶ 32). Inmates presenting with COVID-19-like symptoms will be evaluated and a determination made whether isolation and/or testing is appropriate. (*Id.* ¶ 34). FCI Elkton medical providers are prioritizing immediate medical care for anyone who claims symptoms indicative of a COVID-19 infection. (*Id.* ¶ 35). Certain units are designated as the isolation unit for inmates who are symptomatic or test positive to limit contact with asymptomatic inmates. (*Id.* ¶¶ 24, 34, 51). Any inmate whose condition merits hospitalization will be transported to a local hospital. (*Id.* ¶ 51).

In sum, the BOP is responding to the COVID-19 pandemic, including with the increased use of measures like home confinement to manage the prison population and keep inmates safe; and increased safety procedures and medical screening at facilities, including FCI Elkton, in an effort to detect COVID-19-positive inmates, to limit the spread of COVID-19, and to ensure the availability of appropriate medical care to the infected. Sanchez's request for compassionate release was made to the BOP less than two weeks ago, and he has not yet exhausted his administrative remedies. That motion should be denied as premature.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court enter an order denying Sanchez's application based on his November 26, 2019 submission, and denying

Sanchez's application based on his April 9, 17, and 20, 2020, submissions without prejudice to renewal at such time as he may satisfy the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).

Dated: New York, New York
April 22, 2020

                                                  Respectfully submitted,

                                                  GEOFFREY S. BERMAN
                                                  United States Attorney

                        by:        */s/ Michael D. Lockard*
                               Michael D. Lockard
                               Assistant United States Attorney
                               (212) 637-2193