UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

ROBERTO SANCHEZ,

Defendant.

No. 08-cr-789-1 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Before the Court is a renewed request by Defendant Roberto Sanchez for compassionate release under the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), in light of the COVID-19 pandemic. (Doc. No. 417.) Sanchez previously sought such relief in April in a number of submissions (Doc. Nos. 406, 409, 411), which the government opposed on procedural grounds (Doc. No. 414). The Court denied Sanchez's requests without prejudice to renewal, finding that he had failed to exhaust his administrative remedies. (Doc. Nos. 410, 416.) Since then, Sanchez has satisfied that procedural hurdle, and the Court may now consider his motion on the merits. Although Sanchez has medical conditions that put him at a higher risk of serious health consequences should he contract COVID-19, the reasons supporting his sentence weigh strongly against compassionate release at this time. Accordingly, Sanchez's motion is DENIED.

## I. Background

On February 18, 2009, Sanchez was charged in a superseding indictment with conspiring to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Doc. No. 70) for his participation in a conspiracy to traffic hundreds of kilograms of cocaine from Panama to the United States (Presentence Investigation Report ("PSR") ¶¶ 11–16). Sanchez used his trucking company to pick up and deliver the cocaine to co-conspirators in the New York and

New Jersey area.  (*Id.*)  He recruited his wife and younger brother into the conspiracy (*id.* ¶¶ 13, 15) and directed other co-conspirators to sell cocaine and give him the profits (*id.* ¶ 15).  One co-conspirator – Milton Samuels – provided protection for the conspiracy, bringing a handgun to a money delivery on at least one occasion.  (*Id.* ¶ 16.)  Samuels also possessed multiple firearms, including numerous handguns and an AK-47, that he used in connection with the narcotics distribution operation.  (Doc. No. 343 at 3.)  In the course of their investigation, authorities seized approximately 300 kilograms of the conspirators' cocaine.  (PSR ¶ 16.)

On March 9, 2009, Sanchez pleaded guilty to Count One of the indictment without a plea agreement.  (Doc. No. 343 at 3.)  At sentencing on September 24, 2009, based on its findings that Sanchez was a leader and organizer of criminal activity involving five or more individuals, U.S.S.G. § 2D1.1(b)(1), that he knowingly used weapons in furtherance of his narcotics activity, U.S.S.G. § 3B1.1(a), and that the conspiracy involved 150 kilograms or more of cocaine, the Court determined that Sanchez's offense level was 41.  (Doc. No. 343 at 4.)  Together with a criminal history category of I, Sanchez's Guidelines range was 324 to 405 months' imprisonment.  (*Id.*)  The Court sentenced Sanchez below that range to 240 months' imprisonment, 5 years' supervised release, and a $1 million fine.  (Doc. No. 140.)  In so doing, the Court recognized Sanchez's hard work and support of his family.  (Doc. No. 154 ("Sent. Tr.") at 43.)  Nevertheless, the Court emphasized the "staggering" seriousness of Sanchez's offense (*id.* at 46) – trafficking 300 kilograms of cocaine with incalculable destructive potential (*id.* at 44–45) – his significant leadership role in the "extensive conspiracy" (*id.* at 9), his use of his business to corrupt a customs official (*id.* at 49–50), and his exploitation of his family during the course of the conspiracy (*id.* at 48–50).  The Court therefore concluded that, given the nature of the offense, Sanchez's history, and the need for deterrence, a sentence of 240 months was appropriate.  (*Id.* at 47–50.)  Sanchez

is currently serving his sentence and is expected to be released on August 25, 2025. (Doc. No. 419 ("Gov't Opp'n") at 3.)

Sanchez's requests for compassionate release to this Court have been numerous and disjointed. On November 26, 2019, Sanchez submitted a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his remorse and rehabilitation while incarcerated. (Doc. No. 402 at 2.) He requested a reduction in his sentence to time served, to home confinement, or to release to halfway house. (*Id.* at 3.) The motion indicated that he submitted his request to the Bureau of Prisons ("BOP") on September 4, 2019. (*Id.* at 4–6.) On April 9, 2020, Sanchez filed a *pro se* letter supplementing his motion for compassionate release in which he referred to his medical conditions – namely, diabetes and high blood pressure – and the presence of COVID-19 at FCI Elkton in Elkton, Ohio, the facility in which he is housed. (Doc. No. 406.) On April 20, 2020, Sanchez, now represented by counsel, filed a second supplemental submission in support of his request, principally contending that FCI Elkton "is ill-equipped to contain the pandemic" and prevent the spread of COVID-19 among inmates, which is particularly dangerous to him because his medical conditions render him "more likely to experience severe symptoms and complications" if infected. (Doc. No. 411 at 2.) The Court denied Sanchez's initial request for compassionate release, determining that, without more, rehabilitation while incarcerated is not sufficient to establish an extraordinary and compelling reason for compassionate release. (Doc. No. 416 at 3.) To the extent that Sanchez based his motion on his health conditions and risk of exposure to COVID-19, the Court denied the request without prejudice to renewal because Sanchez had failed to exhaust his administrative remedies with respect to those contentions. (*Id.* at 3–4.)

Separately, on April 17, 2020, Sanchez filed a second, counseled request for compassionate release based on his medical conditions and the presence of COVID-19 at FCI Elkton. (Doc. No.

409.) The Court denied the request without prejudice because Sanchez had yet to exhaust his administrative remedies with the BOP for that request as required by 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 410 at 2.)

On May 29, 2020, Sanchez filed a renewed motion for compassionate release, stating that he has remedied that procedural defect. (Doc. No. 417.) He contends first that extraordinary and compelling reasons warrant his release, arguing that his medical conditions place him in the "high-risk" category for "serious complications" if he were to contract COVID-19 (*id.* at 1) and that FCI Elkton has "patently failed to adequately protect inmates" (*id.*) as demonstrated by the 332 inmates that have tested positive as of the date of his motion (*id.* at 3). He next argues that the § 3553(a) factors justify a reduction of his sentence to time served because FCI Elkton's response to the pandemic "has dramatically altered the level of punishment" that he has experienced – allegedly spending "weeks in a locked-down setting" – and that he has thereby "been sufficiently punished" for his crimes. (*Id.* at 5.) Sanchez conspicuously fails to address the nature and circumstances of his offense, including the 300 kilograms of cocaine that he trafficked or the undoubted harm inflicted by the drugs that he imported and distributed in the United States.

The government opposes Sanchez's motion, contending that he has not established extraordinary and compelling reasons for his release and that the § 3553(a) factors weigh against his release. (Gov't Opp'n.)

## II. Discussion

The Court "may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks omitted). Section 3582(c)(1)(A) provides one such exception, often referred to as "compassionate release." Through that provision, the Court

may "reduce" a defendant's sentence where "extraordinary and compelling reasons warrant such a reduction," and such relief would be consistent with both the factors in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Here, Sanchez maintains that the presence of COVID-19 at FCI Elkton and the facility's response to the pandemic, together with his heightened risk from diabetes and high blood pressure, merit compassionate release. The Court disagrees.

First, although there appears to be no dispute that Sanchez has diabetes and high blood pressure, which place him at an increased risk of complications if he were to contract COVID-19, nothing in the record suggests that Sanchez has been "unable to care for himself" or that he has "been neglected by [FCI Elkton] medical personnel." *See United States v. Hasan-Hafez*, No. 16-cr-221 (KPF), 2020 WL 2836782, at *4 (S.D.N.Y. June 1, 2020); *see also United States v. Fernandez*, No. 12-cr-844 (AJN), 2020 WL 3034799, at *2 (S.D.N.Y. June 5, 2020) (in denying compassionate release, noting that defendant's "hypertension and diabetes appear[ed] to be well-managed through medication"). Indeed, Sanchez's medical records make clear that he has worked successfully with BOP medical professionals to manage his conditions (*see* Gov't Opp'n Ex. A). *See United States v. Brady*, No. 18-cv-316 (PAC), 2020 WL 2512100, at *3–4 (S.D.N.Y. May 15, 2020) (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions were stable and managed in BOP facility); *United States v. Garcia*, No. 18-cr-802 (CM), 2020 WL 2468091, at *5–6 (S.D.N.Y. May 13, 2020) (denying compassionate release to defendant with asthma, high blood pressure, and heart conditions housed in facility with 40 documented cases of COVID-19).

Furthermore, the record reflects that FCI Elkton has undertaken substantial steps to minimize the danger COVID-19 poses to inmates. (*See* Gov't Opp'n at 10–13 (describing those

steps).)  Despite Sanchez's adamant protestations to the contrary (*see* Doc. No. 417 at 1), the fact that Sanchez tested negative for COVID-19 on May 18, 2020 suggests that FCI Elkton's response has mitigated the spread of COVID-19 in the facility at least to some extent (Gov't Opp'n at 13; *id.* Ex. A at 1).  Thus, while the COVID-19 outbreak at FCI Elkton is undoubtedly serious, *see Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *7–9 (6th Cir. June 9, 2020), the facility's response has been correspondingly serious to effectively combat it, and the last time an inmate required hospitalization for COVID-19 treatment was May 4, 2020 (Gov't Opp'n at 13).

Second, even if Sanchez could make this threshold showing, his motion would still fail.  Before the Court may grant compassionate release, it must assess the § 3553(a) factors to determine "whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."  *United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020); *see also United States v. Walter*, No. 18-cr-834, 2020 WL 1892063, at *2–3 (S.D.N.Y. Apr. 16, 2020) (denying compassionate release despite the presence of "extraordinary and compelling reasons" because, among other things, the § 3553(a) factors did not favor early release); *United States v. Butler*, No. 19-cr-834 (PAE), 2020 WL 1689778, at *2–3 (S.D.N.Y. Apr. 7, 2020) (same).

In this case, the § 3553(a) factors, on balance, strongly disfavor compassionate release.  In particular, (1) "the nature and circumstances of the offense," (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," all outweigh the facts that might otherwise support Sanchez's release.  *See* 18 U.S.C. § 3553(a).

The Court's reasons for imposing a sentence of 240 months' imprisonment on Sanchez are

just as applicable today as they were in 2009. (*See* Sent. Tr. at 39–52.) Releasing Sanchez now would disserve those important interests. *See Walter*, 2020 WL 1892063, at *3; *Butler*, 2020 WL 1689778, at *3. Reducing his sentence by over five years and converting it to time served would undermine its deterrent effect. Moreover, as the Court explained at sentencing, it could not "in good conscience" impose a sentence less than 240 months because of the seriousness of Sanchez's crimes – trafficking over 300 kilograms of cocaine in a conspiracy that involved firearms, corrupting a customs official, and the involvement of his wife and younger brother. (*See* Sent. Tr. at 50.) The Court is sympathetic to Sanchez's concerns for his health, but the relief he seeks is an inappropriate remedy in these circumstances. *See Ebbers*, 432 F. Supp. 3d at 431 (acknowledging that compassionate release should not "undermine the goals of the original sentence").

Of course, as the Court noted in its previous order (Doc. No. 410), Sanchez may still pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is exclusively reserved to the discretion of the BOP.

### III. Conclusion

For the reasons set forth above, Sanchez's motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at document number 417.

SO ORDERED.

Dated:    June 17, 2020
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation